Zimmerman, J.
 

 On the jury trial of this controversy, both Lee and Louis Tiberio testified that Louis had signed the cognovit note merely as a witness. An examination of the original note does show that he wrote his name on the lower, left side thereof, under
 
 *29
 
 the words, “Witness our hands and seals.” However, Lena Cassella, who asserted she was - present at the signing of the note, stated on the witness stand that Louis had signed as a guarantor. Apparently the jury believed her.
 

 Testimony was also offered that Lee Tiberio, after his discharge in bankruptcy in 1935, acknowledged liability on the note and made three separate five-dollar payments thereon. The jury evidently believed this.
 

 In its general charge the trial court instructed the jury, in effect, that the burden of proof rested on Louis Tiberio to sustain his claim that he signed the note as a witness. The jury was also instructed in substance that if Louis Tiberio did sign the note as a maker and that if it further found by the greater weight of the evidence that he did not disaffirm his act within a reasonable time after reaching majority, the plaintiff, Lena Cassella, was entitled to recover against him.
 

 As has been observed, the jury returned its verdicts against both Lee and Louis Tiberio and it is therefore plain that it resolved the various issues of fact submitted to it, under the charge of the court, for Lena Cassella.
 

 The bill of exceptions establishes the following matters:
 

 (1) The cognovit note involved was executed and delivered in return for money which had previously been borrowed by Lee Tiberio, and Louis Tiberio received no benefit from such borrowed money.
 

 (2) Lena Cassella, transferee of the note, was familiar with the whole situation leading up to the execution of the note.
 

 (3) Louis Tiberio signed the note purely on an accommodation basis and thereafter remained passive, neither affirming nor disaffirming his action until
 
 *30
 
 October of 1944 when he filed objections to the revivor of the dormant judgment, averring that he was a minor at the time he affixed his signature to the note.
 

 Louis Tiberio testified, and such testimony was uncontradicted, that he had no knowledge that the cognovit note had been reduced to judgment until October 1943.
 

 The trial court, in rendering judgment for Louis Tiberio notwithstanding the verdict, and the Court of Appeals, in. approving such determination, adopted the rule that where an infant enters into a contract out of which he derives no benefit, it is not binding on him unless he ratifies the same after becoming of age.
 

 On the other hand, counsel for Lena Cassella stoutly maintain that the contract made by Louis Tiberio when he signed the note was voidable, that his failure to dis-affirm within a reasonable time after reaching majority constituted ratification, and that the fact that the transaction was of no benefit to him is immaterial.
 

 In 12 American Jurisprudence, 507, Section 9, we find the following statements:
 

 “An executory contract is one in which a party binds himself to do, or not to do, a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done. * * * Another distinction between an executory and an executed contract is that the former requires affirmative action for its establishment, but the latter remains in force until disaffirmed.”
 

 Tn 27 American Jurisprudence, 808, Section 82, under the general heading “Infants,” it is categorically stated that “the great weight of authority is to the effect that omission to disaffirm within a reasonable time does not ratify an executory contract, provided the former infant does not retain possession of the consideration. * * * It seems, however, that an executed
 
 *31
 
 contract voidable on the ground of infancy is deemed to be ratified by the failure of the former infant to disaffirm it within a reasonable time after reaching majority.”
 

 Certainly, a written and signed promise to pay money comes within the classification of an executory contract so far as the promisor is concerned. Most of the later authorities which have come to our attention and which deal squarely with the subject are of the following import:
 

 Except for a limited class of contracts considered binding, as for necessaries, etc., the contract of an infant is voidable, and this is so as to both executed and executory contracts, but with different applications of the term, “voidable.” Thus, to say that the executed contract of an infant is voidable means that it is binding until disaffirmed by some act demonstrating that the party refuses longer to be bound thereby. To say that the executory contract of an infant' is voidable means that it is capable of being confirmed or avoided, although, until there is a definite ratification or confirmation by the infant after he becomes of age, it may not be enforced against him.
 

 For a practical application of the rule, attention is directed to the case of
 
 Nichols & Shepard Co.
 
 v.
 
 Snyder,
 
 78 Minn., 502, 81 N. W., 516, where it is held in the syllabus written by the court:
 

 “The contract of an infant is simply voidable, and in law there is a marked distinction between his executed contract and his contract merely executory. As to the latter he may always interpose his infancy as a defense in an action for its enforcement, and he is not bound by such a contract unless he has affirmed or ratified it after he has arrived at maturity by some sufficient act or deed.”
 

 See, also,
 
 Fetrow
 
 v.
 
 Wiseman,
 
 40 Ind., 148, 156
 
 *32
 
 (cited with approval in
 
 Harner
 
 v.
 
 Dipple,
 
 31 Ohio St., 72, 76, 27 Am. Rep., 496, 499);
 
 Tyler
 
 v.
 
 Estate of Gallop, Deceased,
 
 68 Mich., 185, 35 N. W., 902, 13 Am. St. Rep., 336 (cited in the notes to the text in 27 American Jurisprudence, 808, Section 82); 43 Corpus Juris Secundum, 168, Section 74.
 

 Such rule is particularly appropriate in a situation like the one presented by the instant case.
 

 Looking at the matter realistically, we see no good reason why, when an infant receives something of value under a contract which is executory as to him, he should not be held to the bargain if he retains the thing and does nothing by way of disaffirmance for an appreciable length of time after reaching legal age. See 27 American Jurisprudence, 756, Section 12.
 

 In our opinion the executed contract of an infant is and should be binding upon him by his failure to dis-affirm it within a reasonable time after attaining majority, but where the contract is wholly executory and it is apparent the infant has received no benefits, a different conclusion is in order. 43 Corpus Juris Secundum, 169, Section 74. Compare
 
 Mestetzko
 
 v.
 
 Elf Motor. Co.,
 
 119 Ohio St., 575, 165 N. E., 93.
 

 A number of the cases emphasize lack of benefits, and this is the consideration which motivated the Court of Common Pleas and the Court of Appeals to exonerate Louis Tiberio from liability on the cognovit note which bore his signature.
 

 As is said in
 
 Brownell, Recr.,
 
 v.
 
 Adams,
 
 121 Neb., 304, 236 N. W., 750, near the close of the opinion:
 

 ‘ ‘ Where an infant has received some benefit during infancy, he must repudiate the contract within a reasonable time after attaining majority. * *
 
 *
 
 But not having received any benefit, and not having ratified the contract after his arrival at majority, he is not bound by the same.”
 

 
 *33
 
 Other eases support the proposition that a contract which is patently of no benefit to an infant must be ratified by him after he reaches majority to render him liable thereon. J.
 
 G. Pierce Co.
 
 v.
 
 Wallace,
 
 251 Mass., 383, 146 N. E., 658;
 
 Walker
 
 v.
 
 Stokes Bros. & Co.
 
 (Tex. Civ. App.), 262 S. W., 158;
 
 Groesbeck
 
 v.
 
 Bell,
 
 1 Utah, 338; 43 Corpus Juris Secundum, 184, Section 76d.
 

 Although, so far as we can ascertain, this court has not passed directly on the matters under discussion, the case of
 
 Harner
 
 v.
 
 Dipple,
 
 31 Ohio St., 72, 27 Am. Rep., 496, carries the implication that an executory contract of an infant requires ratification by him after arriving at majority to be enforceable against him, and the case of
 
 Lanning
 
 v.
 
 Brown,
 
 84 Ohio St., 385, 95 N. E., 921, Ann. Cas., 1912C, 722, holds in effect that a conveyance of real estate made by an infant may be disaffirmed and the land recovered within a period of 21 years (statute of limitations) from the time he becomes of age, where there has been no ratification of the conveyance. See 27 American Jurisprudence, 808, Section 83.
 

 As we are of the opinion that the judgments below were correct, the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Turner, Matthias, Hart, Sohngen and Stewart, JJ., concur.